IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:22CR100 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIE A. PRATT, | ) | UNITED STATES' TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Rebecca C. Lutzko, United States Attorney, Yasmine Makridis and Payum Doroodian, Assistant United States Attorneys, and respectfully submits the following trial brief in accordance with this Court's Trial Order.

I.  **STATEMENT OF FACTS**

On October 30, 2021, Pratt sold cocaine and fentanyl to K.F. in Cleveland, Ohio. A female friend of K.F. witnessed Pratt make the sale outside a home on Walton Avenue. In addition, evidence from Pratt and K.F.'s cell phones, Pratt's GPS ankle monitor, and cell tower data corroborated that Pratt sold K.F. drugs. Throughout the evening and into the next morning, K.F. used the drugs obtained from Defendant many times. At approximately 9:30am in the morning of October 31, 2021, the female friend called 911 after she found K.F. unresponsive and cold to the touch. The Cuyahoga County Medical Examiner's Office later determined that K.F. died due to an overdose of cocaine and fentanyl.

The following day, on November 1, 2021, Detective Asbury sent text messages to Pratt from K.F.'s phone. During the text conversation, Detective Asbury asked for "80 girl 60 boy,"

which Detective Asbury knows is street slang for cocaine and heroin and the same order K.F. made two days earlier. Pratt responded with "95th Detroit" and "How long." Detective Asbury replied, "Need 25," to which Pratt responded "Ok." Detective Asbury then traveled in an undercover vehicle to the area of 95th Street and Detroit Avenue in order to arrest Pratt. During the text exchange, Pratt directed Det. Asbury to purchase the narcotics from his cousin, Darryl Roberts.

Shortly after the above exchange, Asbury got a text message from Roberts stating, "I'm behind u." Right behind Asbury's undercover vehicle, officers found Darryl Roberts alone in a white Kia Sportage with nearly two grams of cocaine, heroin, acetyl fentanyl, and fentanyl mixtures in his pocket, along with approximately $2,541 in cash and two cell phones in the vehicle. Roberts admitted to law enforcement that he is Willie Pratt's cousin and agreed to assist law enforcement in locating Pratt, who Roberts stated lives on Walton Avenue in Cleveland Ohio. Roberts then texted Pratt and asked for drugs. After Pratt responded, officers transported Roberts to the vicinity of Walton Avenue. Meanwhile, at Walton Avenue, a surveillance detail observed Pratt driving a silver Lincoln Town Car and pull into the driveway for 3316 Walton Avenue, a home adjacent to a Walton Elementary School and about a block away from 3517 Walton Avenue where the witness saw K.F. obtain drugs from Pratt. Shortly thereafter, Roberts walked down Walton Avenue and entered the home at 3517 Walton Avenue. Seconds later, Roberts and Pratt both emerge from 3517 Walton Avenue and enter Pratt's vehicle. Pratt then drove back down the street and parked in front of 3316 Walton Avenue. As Pratt and Roberts exited Pratt's vehicle, officers approached them in order to make arrests. As officers approached the pair, Agent Brad Shultz observed Pratt see the officers and then toss a plastic bag of narcotics onto the driver's seat of his vehicle. Officers arrested Pratt and Roberts and seized the bag of narcotics, later found to be mixture of fentanyl and cocaine, in plain view on the driver's seat.

On January 18, 2022, a federal magistrate signed a complaint against Pratt alleging violations of Title 21, United States Code, Sections 841 and 846. On March 3 and September 15, 2022, a federal grand jury in the Northern District of Ohio charged Pratt with one count of Distribution of a Controlled Substance resulting in death, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), one count of Conspiracy to Possess with Intent to Distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and two counts Possession with Intent to Distribute, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

## II. CONTROLLING LAW

In the Indictment, Defendant is charged in Counts 1 with Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

1: The defendant knowingly [or intentionally] distributed a controlled substance.

2: That the defendant knew at the time of distribution that the substance was a controlled substance.

Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Section 14.02A.

Count 1 further charges death resulted from the defendant's distribution of a mixture of cocaine and fentanyl. To sustain its burden of proof for this crime, the United States must prove all of the following additional elements beyond a reasonable doubt:

1: That K.F. would not have died but for the use of that same cocaine and/or fentanyl distributed by the defendant.

2: The defendant was part of the distribution chain that placed the cocaine and/or fentanyl into the hands of K.F.

Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Sections 14.02B.

3

Count 2 of the Indictment charges the Defendant with conspiracy to possess with intent to distribute controlled substances, in violation 21 U.S.C. § 846. To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

1: Two or more persons conspired, or agreed to possess with intent to distribute controlled substances

2: That the defendant knowingly and voluntarily joined the conspiracy.

Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Section 14.05.

Further, In Counts 3-4, Defendant is charged with Possession with the Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

1: The defendant knowingly [or intentionally] possessed a controlled substance (or aided and abetted to do the same).

2: The defendant intended to distribute this controlled substance.

Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Section 14.01.

### III. POTENTIAL EVIDENTIARY ISSUES

#### A. DEFENDANT'S STATEMENTS ARE SUBSTANTIVELY ADMISSIBLE UNDER RULE 801(d)(2) ONLY WHEN OFFERED BY THE GOVERNMENT.

1. The Government can seek to admit Defendant's out-of-court statements, but Defendant cannot.

The Government intends to admit some of Defendant's out-of-court statements for the truth of the matters asserted, primarily through audio and video recordings.

Out-of-court statements made by a party-opponent are excluded from the definition of hearsay under Rule 801(d)(2), but this exception does not apply when the same statements are offered by the party himself. The party-opponent exception reflects the fact that the adversarial

4

process allows the party-declarant to rebut his or her own admissions by testifying at trial. *See United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005). This exception does not, however, extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses. *See United States v. Payne*, 437 F.3d 540, 547-48 (6th Cir. 2006). Precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause. *See United States v. Ford*, 761 F.3d 641 (6th Cir. 2014).

Therefore, the Government respectfully requests that the Court prohibit defendant from introducing any of his out-of-court statements at trial.

B. ADMISSIBILITY OF AUDIO/VIDEO RECORDINGS

As indicated above, the United States will introduce the audio/video recordings from police body cameras as well as the 911 call. In addition, the United States may also introduce relevant jail calls between Defendant and other individuals as it relates to the charged crimes. Generally, the admission of audio and video recordings in evidence is subject to the rules of evidence. Accordingly, a proper foundation must be laid for their admission, and the recordings must be relevant and not privileged. Where practical, the original recordings should be used, pursuant to Fed. Rule 1002, and when telephone conversations are involved, evidence should be offered as to the correct telephone number, Rule 901(b)(6). *United States v. Watson*, 594 F.2d 1330, 1335 (10th Cir.), *cert. denied, Brown v. United States*, 444 U.S. 840 (1979). However, under Fed. Rule 1003, a duplicate is admissible to the same extent as an original unless there is a genuine question about the authenticity of the original or it would be unfair to admit the duplicate. The Sixth Circuit has discussed what necessary foundation for a tape recording is:

> While we have not in our prior cases indicated precisely what foundation is necessary to admit audiotapes where the challenge is to their admission generally, other circuits have alternately held that the district court must be satisfied that the recording is accurate, authentic, and generally trustworthy, that simply required is proof that the tape recording accurately reflects the conversation in question, or that

5

> a proper foundation may be established in two ways: a chain of custody… or alternatively, other testimony could be used to establish the accuracy and trustworthiness of the evidence.

*United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004) (citations and quotation marks omitted).

    C.    <u>THE JURY SHOULD NOT BE INFORMED OF THE CONSEQUENCES OF ITS VERDICT.</u>

If convicted in this case, Defendant faces a lengthy, mandatory term of imprisonment. Defendant may endeavor to educate the jury on the potential ramifications of a guilty verdict in this case with the hope of obtaining jury nullification. The Sixth Circuit has firmly rejected such a strategy: "[U]nless juries have roles in sentencing, such as in capital sentencing proceedings, juries should be instructed not to consider defendants' possible sentences during deliberation." *United States v. Chesney*, 86 F.3d 564, 574 (6th Cir. 1996). *See also United States v. Stotts*, 176 F.3d 880, 886 (6th Cir. 1999) ("the Supreme Court has held that juries should be instructed not to consider a defendant's possible sentence unless the jury has a specific role in sentencing"). The Supreme Court explained the reasoning behind insulating the jury from possible penalties in a case.

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

6

*Shannon v. United States*, 512 U.S. 573, 579 (1994). Accordingly, Defendant should not be permitted to distract and confuse the jury by inviting the jury to decide the issue of guilt with the knowledge of this sentencing issues or collateral immigration consequences.

The Government moves this Court, *in limine*, to prohibit Defendant from eliciting any testimony or making any argument that may directly or indirectly inform the jury of sentencing options or endeavor to engender sympathy for Defendant. In so moving, the Government is asking the Court to direct counsel to conduct such examination so as to truly question about bias and not merely inform the jury of the potential sentences Defendant faces.

> D. NOTICE OF INTENT TO USE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS, OR OTHERWISE *RES GESTAE*/INTRINSIC EVIDENCE

The United States hereby gives notice of its intent to use text message conversations from Defendant Willie Pratt's phone and testimony from a co-conspirator as it relates to other drug transactions committed by the Defendant. This is presented to show intent, plan, and opportunity to commit the charged offenses.

Generally, "other acts evidence" is not admissible "to prove a person's character in order to show that on a particular occasion a person acted in accordance with that character." Fed. R. Evid. 404(b). It may, however, be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or lack of accident." *Id.* "[T]he rule is one of inclusion rather than exclusion." *United States v. Copeland*, 51 F.3d 611, 614 (6th Cir. 1995).

The admissibility of Rule 404(b) evidence is governed by a "three-step analysis." *United States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013) (citing *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012)). The first inquiry is whether there is sufficient evidence that the other act actually occurred. *Id.* Second is "whether the evidence is probative of a material issue other

7

than character." *Id*. Third, courts must consider whether the probative value of the evidence substantially outweighs any unfair prejudice, under Rule 403. *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006). The evidence is viewed in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect. *Id*. The district court need not make a finding that the proponent proved the other act by a preponderance of the evidence; "such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). In addition to its interplay with the Rule 404(b) analysis, Rule 403 independently "provides a balancing test for excluding relevant evidence." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). This balancing test is "strongly weighted toward admission." *Id*.

In contrast, the Sixth Circuit has deemed that Rule 404 of the Federal Rules of Evidence does not bar "background" or *res gestae* evidence. In *United States v. Hardy*, the Sixth Circuit announced, "[t]his court has previously recognized the propriety of introducing 'background' evidence. Such evidence, often referred to as 'res gestae' does not implicate Rule 404(b)." 228 F.3d 745, 748 (6th Cir. 2000) (*citing United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000); *United States v. Hajal*, 555 F.2d 558, 568 (6th Cir. 1977) (Other acts may be so much a part of the *res gestae* of a crime that they should be admitted). The *Hardy* court then explains:

> Rather, the very definition of what constitutes background evidence contains inherent limitations. *Buchanan, Paulino* and other cases dealing with this issue teach that background or *res gestae* evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.
>
> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

8

228 F.3d at 748 (emphasis added) (*citing* 2 Jack B. Weinstein, Margaret A. Berger & Joseph M. McLaughlin, *Weinstein's Federal Evidence*, § 404.20[2][c] and [d]; *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir.1998); *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995); *United States v. Townsend*, 796 F.2d 158, 162 (6th Cir.1986); *United States v. Cunningham*, 103 F.3d 553, 557 (7th Cir.1996); and Jennifer Y. Schuster, *Uncharged Misconduct Under Rule 404(b): The Admissibility of Inextricably Intertwined Evidence,* 42 U. Miami Law Review 947 (March/May 1998) (*See United States v. Rice*, 2004 WL 333800 (6th Cir. 2004). Therefore, evidence of background or *res gestae* is properly admissible as it is not precluded by Rule 404(a) of the Federal Rules of Evidence.

Additionally, "Rule 404(b) does not extend to evidence of acts which are 'intrinsic' to the charged offense." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995); *United States v. Rozin*, 664 F.3d 1052 (6th Cir. 2012); *United States v. Marrero,* 651 F.3d 453, 471 (6th Cir. 2011). "Where the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with the evidence of, the crime charged, Rule 404(b) is not applicable." *United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010). Intrinsic acts "are those that are part of a single criminal episode," *Barnes*, 49 F.3d at 1149, including evidence that is "inextricably intertwined with evidence the crime charged," *United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001)(citing *Barnes*, 49 F.3d at 1149), or "part of a continuing pattern of illegal activity." *Id*.

In this case, the United States must prove that Defendant possessed a small quantity of narcotics *with the intent to distribute* those drugs. In addition, The United States must prove that Defendant engaged in a conspiracy with another to sell narcotics. Evidence of Defendant's prior narcotics transactions close in time with the charged offenses is highly probative of his intent, plan, and opportunity to distribute the same drugs in his possession. Accordingly, such evidence is admissible under 404(b).

9

Alternatively, such evidence is also so closely tied to the charged offenses that it also constitutes *res gestae* evidence. Specifically, the evidence of drug communications with a co-conspirator, before the charged offense date, is necessary background evidence to show Defendant's intent to join a conspiracy with Roberts in order to sell narcotics.

Once the moving party shows an admissible purpose for entering evidence of past actions, the court must weigh its potential prejudicial effect against its probative value. *Id.* at 1077. "Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Evidence is unfairly prejudicial if "the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person ... and that if 'he did it before he probably did it again.'" *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994). However, evidence that is prejudicial only in that it paints a defendant in a bad light, but does not confuse or mislead the jury, is not unfairly prejudicial. *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). In other words, unfair prejudice does not result "from the legitimate probative force of the evidence;" rather, it results only when prejudicial evidence "tends to suggest a decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). Additionally, in applying Rule 403's balancing test, the government's need for the evidence is an important consideration. *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989).

In this case, the risk of unfair prejudice is fairly limited. The facts are discrete, easily understood, and fairly straightforward. The defendant drug communications with a co-conspirator, as well as other drug customers, is relatively close in time with the charged offenses. With proper instruction that it can only be used to prove intent, plan, and opportunity, the risk that the jury will use it for an illegitimate purpose is virtually non-existent. In comparison, the

probative value is great in this case as it directly addresses the necessary elements for the charges, especially as it relates to the Defendant's intent to join a conspiracy to sell narcotics and his intent to distribute narcotics found in his possession.

Accordingly, the United States, therefore, gives notice that it intends to present the evidence discussed herein as admissible under Federal Rule of Evidence 404(b) or, alternatively, as *res gestae* evidence. The United States moves this Court to admit such evidence for the reasons stated above.

### E. SELF-AUTHENTICATION OF CELL PHONE EXTRACTIONS

Law enforcement conducted extractions from multiple cell phones in this case. The United States intends to use certain items from those phone extractions at trial, without calling the technician who actually performed the extractions. This is permitted under Federal Rule of Evidence 902(14), which states that the following types of evidence are self-authenticating:

> **(14) Certified Data Copied from an Electronic Device, Storage Medium, or File.** Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902(11).

*See* Fed. R. Evid. 902(14). The United States provided defense counsel with a notice under FRE 902(14), along with a signed certification completed by the persons who conducted the extractions. Accordingly, at trial, the United States does not intend to call the multiple witnesses who completed the extractions and will instead call witnesses who analyzed the data.

11

## IV.     GOVERNMENT REPRESENTATIVE AND SEPARATION OF WITNESSES

The United States respectfully requests that this Court issue a separation-of-witness order pursuant to Fed. R. Evid. 615 and designates Detective Michael Asbury as its representative in this case to be present at counsel table throughout the trial. His presence in the courtroom during trial is essential to the presentation of the United States' case. *See* Fed. R. Evid. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); Fed R. Evid. 615(c) (providing an additional exception for essential witnesses).

## V.      CONCLUSION

The Government anticipates that the parties will confer on the issues identified above, and further anticipates that the parties may be able to resolve any disputes without the Court's intervention. For any issues on which disputes remain and arise at trial, for the foregoing reasons, the Government requests that the Court rule in accordance with the above points and authorities.

          Respectfully submitted,

          REBECCA C. LUTZKO
          United States Attorney

By:     /s/ Payum Doroodian
       Payum Doroodian (DC: 1035376)
       Assistant United States Attorney
       United States Court House
       801 W Superior Ave, Suite 400
       Cleveland, OH 44113
       (216) 622-3739
       (216) 522-2403 (facsimile)
       Payum.Doroodian@usdoj.gov